**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHUJA ALI SYED,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

Civil Action No. 15-5687 (MAS)

OPINION

**SHIPP, District Judge**

*Pro se* Petitioner Shuja Ali Syed has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion"), challenging a sentence imposed by this Court, pursuant to a guilty plea, in *United States v. Syed*, No. 13-cr-0502, ECF No. 25 (D.N.J. entered July 2, 2014) ("Crim. Dkt."), for trafficking in counterfeit goods. For the reasons stated below, the Court denies the Motion.[1]

**I.    FACTUAL BACKGROUND**

On February 26, 2013, the government filed a criminal complaint against Petitioner, alleging that Petitioner engaged in (1) trafficking in counterfeit goods, and (2) money laundering. (Compl. 2, Crim. Dkt., ECF No. 1.) Petitioner was arrested the following day, and was appointed

---

[1] The Court provided Petitioner a notice under *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), explaining his obligation to file an all-inclusive § 2255 motion, and directed him to inform the Court whether he wished to proceed with the existing motion or to withdraw the motion. (Order 2, Dec. 8, 2015, ECF No. 3.) Petitioner subsequently filed an amended motion. (Am. Pet., ECF No. 4.) Having provided Petitioner with a *Miller* notice, and without a corresponding response from Petitioner indicating his desire to withdraw, the Court construes the amended motion as Petitioner's all-inclusive § 2255 motion.

a public defender on the same day. (Order, Feb. 27, 2013, Crim. Dkt., ECF No. 6.) Also on the same day, for the purposes of the Speedy Trial Act, Petitioner's counsel consented to a continuance of the case until April 26, 2013. (Order, Feb. 27, 2013, Crim. Dkt., ECF No. 8.) On May 9, 2013, Petitioner signed the aforementioned plea agreement. (*See* Plea Agreement 6, Crim. Dkt., ECF No. 16 (bearing Petitioner's signature dated May 9, 2013).)

As part of the plea agreement, Petitioner waived his right to be charged by way of indictment and agreed to plead guilty to a one-count Information. (*See* Plea Agreement 1; Information, Crim. Dkt., ECF No. 12; Waiver of Indictment, Crim. Dkt., ECF No. 13.) The Information provided that Petitioner: (1) was a resident of New Jersey; (2) owned and operated an import, wholesale and distribution company; (3) trafficked and attempted to traffic counterfeit products covered by trademarks and patents that he did not receive permission to use; (4) sold and attempted to sell these counterfeit products; and, most importantly, (5) intentionally trafficked and attempted to traffic these counterfeit products, while knowingly using trademarks associated with other products to mark these counterfeits, without permission from the trademark owners, in violation of 18 U.S.C. § 2320. (Information 1-3.) Petitioner also agreed to make full restitution for all losses resulting from his crime, although no specific amount was mentioned in the agreement. (Plea Agreement 2.)

On August 1, 2013, the Court held a plea hearing. (Crim. Dkt., ECF No. 14.) During the hearing, the Court confirmed the above-referenced facts, (*see* Tr. of Plea Ht'g 4:16-6:25, Crim. Dkt., ECF No. 29), and conducted the following colloquy as to the factual basis of Petitioner's guilty plea:

> Q. Mr. Syed, I have about ten questions for you. From at least as early as February 2012 through in or about January 2013, did you and others intentionally traffic and counterfeit all natural male enhancement supplements?

2

> A. Yes.
> Q. Were some of the products that you trafficked counterfeit versions of Libigrow, Blue Diamond, Nite Rider and ExtenZe?
> A. Yes, sir.
> Q. Did you know that the products were counterfeit?
> A. Yes, sir.
> Q. Specifically, did you use your import wholesale and distribution company based in Jersey City, New Jersey to import these counterfeit products from China –
> A. Yes, sir.
> Q. Let me finish, like what the Judge said.
> A. Okay.
> Q. Did you use your company in Jersey to import these counterfeit products from China?
> A. Yes.
> Q. Did you and others then sell and attempt to sell the products to undercover law enforcement agents and to other individuals and wholesalers in New Jersey and New York?
> A. Yes, sir.
> Q. As a result of your and other's importation and sales of these counterfeit products, was more than $600,000 deposited into and through your bank account in New Jersey?
> A. Yes, sir.
> Q. Did you also wire more than $1 million to China?
> A. Yes, sir.
> Q. Are you pleading guilty to the information because you are, in fact, guilty of trafficking in counterfeit goods?
> A. Yes, sir.
> Q. Have you limited your answers today solely to the questions that I've asked of you?
> A. Yes, sir.
> Q. Do you have additional information that you could provide if called upon to testify before a grand jury or at trial?
> A. Yes, sir.

(*Id.* at 15:4-16:18.) At the hearing, the government confirmed that Petitioner agreed to pay restitution but did not mention the degree or amount of restitution that would be required. (*Id.* at 10:12-25.)

On June 30, 2014, the Court held a sentencing hearing. (ECF No. 24.) Pursuant to an agreed-upon offense level of twenty-one, which carried a guidelines sentence range of thirty-seven to forty-six months, and a 5k letter by the government for Petitioner's cooperation in the

investigation of others, the Court imposed a thirty-month sentence with three years of supervised release. (Tr. of Sentencing Hr'g 6:8-13, 17:11-14.) Also, based on the findings of the Pre-Sentence Report ("PSR"), which Petitioner did not object to at the hearing, the Court ordered restitution in the amount of $726,768.22, payable to Pfizer. (*Id.* at 18:9-10.) Judgment was entered on July 2, 2014. (J., Crim. Dkt., ECF No. 25.) Petitioner did not appeal.

## II. STANDARD OF REVIEW

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is not entitled

to relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11-4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545-46).

III. **DISCUSSION**

The Court construes Petitioner's Motion as raising five claims: (1) the conviction and sentence should be vacated due to a Speedy Trial Act violation; (2) the conviction and sentence should be vacated because the Information used to charge Petitioner was defective and the Court, therefore, lacked jurisdiction to adjudicate the criminal matter; (3) counsel was ineffective for failing to raise a challenge under the Speedy Trial Act; (4) counsel was ineffective for failure to investigate the circumstances of Petitioner's conduct to determine whether Petitioner was in fact guilty of the charged offense; and (5) counsel was ineffective for failing to advise Petitioner of the extent of Petitioner's restitution obligations. The Court addresses each of these claims below.

A. **Speedy Trial Act**

Petitioner asserts that there was a Speedy Trial Act violation during his criminal proceedings. Petitioner, however, is barred from raising a substantive Speedy Trial Act claim on federal habeas. "Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). "As a result, the plain language of the statute requires that a defendant bring his claim, if ever, prior to his trial." *Langforddavis v. United States*, No. 13-2921, 2016 WL 4544338, at *10 (D.N.J. Aug. 30, 2016); *see also United States v. Corbin*, 607 F. App'x 136, 139 (3d Cir. 2015) (finding that the defendant waived a substantive Speedy Trial Act claim for the purposes of direct appeal when he did not raise the issue in the trial court "[b]ecause the District Court did not have the opportunity to take the first pass at addressing this argument"). As such, even if there was a technical violation of the Speedy Trial Act, which the Court discusses *infra*, a

5

substantive Speedy Trial Act claim cannot be raised on direct appeal, let alone in a federal habeas petition, when Petitioner did not raise such a claim during the criminal matter. Thus, this claim is denied.

### B. Defective Information

Petitioner argues that the conviction should be vacated because the Information used to charge him did not establish all elements of the charged offense and, therefore, the Court had no jurisdiction to adjudicate the criminal matter. According to Petitioner, a criminal complaint is akin to a civil complaint, and "[i]f this were a civil case, the Court would dismiss the case under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), for failure to state a claim upon which relief could be granted, and under Fed. R. Civ. P. 9(b) for failure to state fraud . . . with sufficient particularity." (Mot. 31.)

The Court does not find Petitioner's analogy persuasive because a *Twombly/Iqbal* defect is not a jurisdictional defect. *See Martinez v. Bank of Am., N.A.*, 664 F. App'x 250, 252 n.3 (3d Cir. 2016) ("The District Court discussed [the plaintiff's] standing in the context of Rule 12(b)(6); *i.e.*, not as a threshold jurisdictional issue."). Because it was not a jurisdictional defect, the Court agrees with Respondent that Petitioner's waiver of his appellate and collateral attack rights in the plea agreement bars him from raising this claim here. *See* (Plea Agreement 8); *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) ("Criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver.").

In addition, Petitioner cites *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002), for the proposition that a challenge to the sufficiency of the charging document may be raised at any time. *Panarella*, however, relied on a previous version of Federal Rule of Criminal Procedure

12(b)(2), which was no longer in effect when the government filed the criminal complaint against Petitioner. At the time the Third Circuit decided *Panarella*, Rule 12(b)(2) provided that objections that "the indictment or information fails . . . to charge an offense . . . shall be noticed by the court at any time during the pendency of the proceedings." *Panarella*, 277 F.3d at 682. Pursuant to the version of Rule 12(b)(2) discussed by the *Panaerlla* court, objections to the indictment or information could be raised before the district court and could also be raised for the first time before the Court of Appeals. *Id.*

The version of Rule 12(b)(2) that was in effect when the government filed the criminal complaint against Petitioner addressed motions that may be made before trial. *See* Fed. R. Crim. P. 12(b)(2) (2013). The 2013 version of Rule 12(b) provided that "a motion alleging a defect in the indictment or information" must be made before trial, "but at any time while the case is *pending*, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B) (2013) (emphasis added). In that regard, the Third Circuit has held that "[a] case is no longer pending for purposes of Rule 12(b)(3)(B): [(i)] when a mandate is issued on direct appeal; [and (ii)] after a judgment is entered and no direct appeal is filed." *United States v. Sturman*, 556 F. App'x 67, 67 (3d Cir. 2014) (citing *Barreto-Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008)). Petitioner, accordingly, cannot assert a defense under Rule 12(b)(3)(B) at this time because his criminal matter is no longer "pending" for the purposes of that rule.

Nevertheless, even if the Court analyzes the substantive merits of Petitioner's claim, his claim fails. The charged offense here was a violation of 18 U.S.C. § 2320, which states, in relevant part, that "[w]hoever intentionally . . . traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services" commits a crime subject to punishment. 18

U.S.C. § 2320(a)(1). From the face of the statute, it is clear that the elements are (1) intentional trafficking of goods and services, (2) while knowingly using, (3) a counterfeit mark, (4) on or in connection with such goods or services.

As summarized above, the Information contained allegations that Petitioner operated an import business in New Jersey, and imported from China counterfeit male enhancement products bearing trademarks that Petitioner knew were not made by, or sold with the permission of, the trademark owners. That is all the statute requires. Petitioner argues that the Information "failed to show any facts that would rise to the level necessary for selling counterfeit goods. The Information in this case fails even to allege any specific intent on the part of Mr. Syed to do anything bad to anyone." (Mot. 31, ECF No. 1.) The Court construes Petitioner's statements as arguing that the statute required additional elements, specifically that (a) Petitioner sold the counterfeit products, (b) with an intent to deceive his customers. Section 2320 contains no such requirements. In fact, nothing in § 2320 required Petitioner to have made a sale to anyone at all—it is enough that he intentionally and knowingly imported counterfeit products for the purposes of private financial gain. *See* 18 U.S.C. § 2320(f)(5) ("[T]he term 'traffic' means to transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of[.]"). Accordingly, the charging document in Petitioner's criminal matter was not defective, and this claim is denied.

C.     **Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate

8

legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[2] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.

### 1. Failure to Raise a Speedy Trial Act Claim

Petitioner asserts that his counsel was ineffective for failing to raise a defense under the Speedy Trial Act. Petitioner bases his assertion on the following facts: (1) he was arrested on February 27, 2013; (2) his plea was not accepted by this Court until August 1, 2013; and (3) his sentencing did not occur until May 13, 2014.[3]

---

[2] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

[3] The Court does not address any argument regarding "speedy sentencing" because there is no such right under the federal constitution. *Betterman v. Montana*, 136 S. Ct. 1609, 1612 (2016) ("[T]he [speedy trial] guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges.").

Under the Speedy Trial Act, a charging document, either an indictment or an information, must be served upon a defendant within thirty days of his arrest. 18 U.S.C. § 3161(b). In addition, the trial must commence within seventy days after the filing of the complaint or the charge, whichever occurs last. 18 U.S.C. § 3161(c)(1). Both of these due dates, however, may be extended to exclude, among other things, (1) "delays resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government[,]" and (2) "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney of the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. §§ 3161(h)(1)(G), (h)(7)(A). The Third Circuit has held that pre-indictment continuances, jointly applied for by the defendant, do not violate the Speedy Trial Act. *See United States v. Villalobos*, 560 F. App'x 122, 124 (3d Cir. 2014) (stating that "defendants cannot request continuances and then claim a violation of the Speedy Trial Act when the continuances are granted.")

Here, Petitioner was arrested on February 27, 2013. Under the Speedy Trial Act, he should have been charged by March 29, 2013. Excluded from that thirty-day period, however, was the continuance granted by the Court—at the joint request of both Petitioner and the government filed on the same day as Petitioner's arrest—until April 26, 2013. (Order, Feb. 27, 2013, Crim. Dkt.) Thereafter, although Petitioner signed a plea agreement on May 9, 2013, the government did not file such agreement with the Court, Petitioner did not file a notice of intent to change plea, and the parties did not request another continuance. At least one circuit court has held that the government is not entitled to tolling when a plea agreement was not submitted to the district court because "the

court could not have 'considered it.'" *United States v. Dignam*, 716 F.3d 915, 924 (5th Cir. 2013). Indeed, Respondent provides no explanation as to why there was a delay in filing the plea agreement with the Court. As such, from April 26, 2013, when the initial continuance expired, to August 1, 2013, when the plea agreement and the charging document were both filed, ninety-seven days ran from the government's thirty-day time limit under § 3161(b) to charge Petitioner, resulting in a sixty-seven-day delay in charging him, a violation of the Speedy Trial Act. Counsel, therefore, could have raised a defense under the Speedy Trial Act, but did not.

Nonetheless, to succeed on a federal habeas claim asserting that counsel was ineffective for failing to raise a Speedy Trial Act defense, a petitioner must show that had counsel effectively asserted such defense, it would have resulted in a dismissal of the case *with prejudice*. *United States v. Zahir*, 404 F. App'x 585, 588 (3d Cir. 2010); *Mir v. United States*, No. 14-3627, 2017 WL 498713, at *5 (D.N.J. Feb. 7, 2017). "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). A fourth factor, prejudice to the defendant, was imposed by the Supreme Court's decision in *United States v. Taylor*, 487 U.S. 326, 334 (1988).

Here, although Petitioner committed a serious crime—a felony punishable by a maximum of ten years of imprisonment—nothing in the record demonstrates harm beyond monetary damages to the patent and trademark holders. In addition, re-prosecution at the time would have placed a minimal burden on the government because the plea agreement was negotiated early in the prosecution. The record also does not indicate a reason for the sixty-seven-day delay. The

11

government could have informed the Court of the signed plea agreement, filed the plea agreement itself, or moved for another continuance, but did not. *See* 18 U.S.C. § 2320(b)(1)(A).

The purposes of the Speedy Trial Act are "to give effect to federal defendants' speedy trial rights under the Sixth Amendment and to mitigate the danger to society of accused persons being on bail for lengthy time periods." *United States v. Odom*, No. 11-cr-0649, 2012 WL 1623295, at *1 (E.D. Pa. May 9, 2012) (citation omitted). "A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover[,] . . . society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest." *Barker v. Wingo*, 407 U.S. 514, 527 (1972). The Third Circuit has held that a dismissal with prejudice under the Speedy Trial Act for a forty-day delay in charging defendants would be proper where the prosecution engaged in "gamesmanship." *See Watkins*, 339 F.3d at 172-73. Furthermore, the Third Circuit has cautioned that "relaxed enforcement of the Speedy Trial Act's strictures inevitably increases noncompliance by the Government." *United States v. Watkins*, 339 F.3d 167, 179 (3d Cir. 2003).

With regard to prejudice to Defendant, as a sister court of this district opined—and the Court agrees—it is difficult to discern the potential prejudice arising from the length of delay alone. *United States v. Hall*, No. 13-cr-684, 2014 WL 1744773, at *4 (D.N.J. May 1, 2014). Here, Petitioner's allegations tend to implicate negligence as opposed to gamesmanship by the government. The ninety-seven days it took to charge Petitioner, nevertheless, was more than three times the amount of time allowed by Congress, far from insignificant. Even so, the Court cannot find that a dismissal with prejudice would have occurred if counsel had raised a Speedy Trial Act defense, which ultimately defeats Petitioner's claim.

Notably, although *Taylor* mandates the Court to consider prejudice to the defendant, it is still incumbent upon Petitioner to show that he actually suffered prejudice. *Hall*, 2014 WL 1744773, at *5. As the Supreme Court stated:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.

*Barker*, 407 U.S. at 533. Petitioner, however, fails to allege that he suffered any of the adverse effects identified in *Barker*, nor does he allege that his pretrial detention was overly oppressive. *See Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993). Undeniably, Petitioner cannot assert such factual allegations because Petitioner was released on bond on the same day of his arrest and was not incarcerated until after sentencing. (*See* Order, Feb. 27, 2013, Crim. Dkt., ECF No. 7.) Petitioner also cannot reasonably argue that his ability to defend himself was hindered by the delay because he signed the plea agreement thirteen days after the initial continuance expired, within the thirty-day time limit to charge him.

As the Court stated above, the sixty-seven-day delay was not trivial. The delay, however, only minimally affected Petitioner, as he was willing to plead guilty and to provide substantial assistance to the government in order to potentially receive a reduced sentence, all the while released on bond. Hence, there was no reasonable probability, had the Court entertained a motion to dismiss for a violation of the Speedy Trial Act, that it would have dismissed the case with prejudice. *See Hall*, 2014 WL 1744773, at *5 (seventy-one-day delay in charging defendant in

13

custody only warranted a dismissal without prejudice). "While the loss of freedom for [seventy-one] days of [petitioner's] life presents a not inconsiderable infringement of the liberty interest protected by the Speedy Trial Act and the Constitution, in the absence of any circumstances showing actual instances of harms, it is not enough to give rise to *per se* prejudice from the length of the delay alone." *Id.* Because Petitioner cannot demonstrate that the violation of the Speedy Trial Act in his criminal matter would have resulted in a dismissal with prejudice, he has failed to show the requisite prejudice required for his ineffective assistance of counsel claim on this ground, so this claim is denied.

### 2. Failure to investigate

Petitioner alleges that counsel failed to investigate the circumstances of his conduct to determine whether he had in fact committed a crime. Petitioner further alleges that had counsel conducted an adequate investigation and properly advised him of his charge, he would have realized that he was innocent and would not have pled guilty. The Court disagrees.

The same two-part *Strickland* standard, described above, is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014). The defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

Here, Petitioner bases his claim of "innocence" on the two factual predicates that: (1) he never knew the counterfeit products he imported were not "all-natural" and contained Cialis and Viagra; and (2) the eventual restitution order that required payment to Pfizer was erroneous

14

because Pfizer had no connection to the counterfeit products in this case. Petitioner, however, failed to demonstrate the relevance of these facts.

First, Petitioner's assertion that he did not know the charge against him implicated Cialis and Viagra is false because the Information, to which he pled guilty, explicitly alleged that the counterfeit products contained Cialis and Viagra. (*See* Information 2 ("An official laboratory analysis from U.S. Customs and Border Protection Laboratories and Scientific Services regarding the counterfeit products that defendant SYED and F.S. sold revealed that the Nite Rider and Libigrow pills, which were marketed as 'all-natural,' contained amounts of the prescription drugs [Viagra and Cialis].").) Furthermore, even if the counterfeit products did not contain Viagra or Cialis, Petitioner was still guilty under § 2320 because he admitted that he intentionally imported products from China that he knew bore counterfeit marks, which satisfied the requirements of § 2320. Petitioner's claim of innocence may have arisen from his confusion about the elements of § 2320, but as the Court explained above, Petitioner's belief that § 2320 required Petitioner's intent to deceive his customer was erroneous.

Next, Petitioner's assertion that he would not have pled guilty had he been informed that Pfizer had no connection to the counterfeit products is a classic hindsight claim. To begin, Petitioner provides no evidence to rebut the finding at sentencing that Pfizer was a victim of Petitioner's crime. Furthermore, it is clear from the record that at the time the plea agreement was entered into, neither party knew to whom the restitution was due. As recounted above, neither in the plea agreement nor at the plea hearing did the government provide any information regarding the amount or the recipient of the restitution, yet Petitioner still agreed to plead guilty. Pfizer was not identified as the victim until the sentencing phase, in the PSR. For Petitioner to now claim that he would not have pled guilty had he learned the identity of the victim is simply disingenuous,

15

because at the time he pled guilty there was no indication he had any idea, or cared about, who the victim was at all, so such information could not have had any effect on his decision to plead guilty. As such, the Court finds that had counsel conducted the allegedly required investigation, (1) it would have simply confirmed that Petitioner's conduct was, in fact, a crime under § 2320, and (2) it would not have caused Petitioner to change his mind about pleading guilty. Petitioner has not established that the alleged deficient conduct caused him to suffer any prejudice under *Strickland*, and this claim is denied.[4]

### 3. Failure to advise regarding restitution

Finally, the Court liberally construes Petitioner's allegations regarding his lack of knowledge concerning Pfizer as asserting that counsel failed to adequately advise him of the scope of restitution, and that had he received adequate advice on the issue, he would not have pled guilty.

There is very little case law addressing this type of habeas claim. There is case law, however, addressing the enforceability of appellate waivers that foreclose challenges to restitution orders on direct appeal when counsel fails to adequately advise a defendant of his restitution obligations. In that context, some courts have held that inadequate advice from counsel renders the waiver invalid because it could not have been knowing and voluntary. *See United States v. Litos*, 847 F.3d 906, 910 (7th Cir. 2017); *United States v. Tsosie*, 639 F.3d 1213, 1217 (9th Cir. 2011) ("[A] defendant cannot validly waive his right to appeal a restitution order if, at the time he

---

[4] Moreover, Petitioner's assertion that he felt forced to plead guilty due to fear of a harsher sentence does not state a constitutional violation. *See McKune v. Lile*, 536 U.S. 24, 42 (2002) ("[P]lea bargaining does not violate the Fifth Amendment, even though criminal defendants may feel considerable pressure to admit guilt in order to obtain more lenient treatment."); *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) (holding that a prosecutor who "no more than openly presented the defendant with the unpleasant alternatives" of not pleading guilty did not violate due process); *United States v. Sanders*, 208 F. App'x 160, 163 (3d Cir. 2006) ("[A] prosecutor does not violate due process when he threatens serious charges to induce a guilty plea[.]").

agrees to waive the appeal, he is not given a reasonably accurate estimate of the amount of the restitution order to which he is exposed."). Nonetheless, that line of cases is not directly applicable here, because (1) it only addresses a specific portion of a plea agreement, not the whole agreement itself, and (2) restitution orders are challengeable on direct appeal, but not on federal habeas. *See Kolasinac v. United States*, No. 13-1397, 2016 WL 1382145, at *5 (D.N.J. Apr. 7, 2016).

The Court recognizes the concerns underlying Petitioner's claim. The Supreme Court has found that no amount of monetary penalty can equate to the severe loss of liberty that incarceration would impose upon a defendant. *See United States v. Nachtigal*, 507 U.S. 1, 5 (1993), *Alexander v. United States*, 509 U.S. 544, 556 (1993) ("[L]oss of liberty is a more severe form of punishment than any monetary sanction[.]") (citing *Blanton v. N. Las Vegas*, 489 U.S. 538, 542 (1989)). It could be reasonably argued, however, that some defendants, if faced with the prospect of both an enormous restitution (for example, on the order of millions of dollars) and a potentially short term of incarceration if convicted, would be willing to go to trial and risk a short term of incarceration in order to avoid restitution altogether if found not guilty. Hence, there is arguably a threshold where the amount of money involved is so large, and the potential restraint on liberty so minor, that a reasonable person could place his interest in money above his interest in liberty.

This, however, is not such a case. Here, Petitioner was informed that he would be liable for restitution, just not its exact scope. The amount of restitution ordered in this case was $726,768.22. As mentioned above, during his plea colloquy, Petitioner acknowledged that more than $600,000 was deposited into and through his bank account and that he wired more than $1 million to China. In addition, the PSR suggested that some of the properties that Petitioner forfeited, in the amount of $74,751.75, would be used to pay for restitution. (PSR 21.) To the extent that counsel could adequately determine the scope of restitution during the plea

17

negotiations, the amount of restitution Petitioner would ultimately be liable for was in the $650,000 range. As set forth above, Petitioner's maximum penalty was ten years for his violation of § 2320 and, as part of the plea agreement, the government also agreed to drop a money laundering charge that was asserted in the original criminal complaint, (*see* Compl. 2, Crim. Dkt., ECF No. 1), and recommended a reduced sentence for Petitioner's cooperation, which Petitioner received.

The Court has carefully considered the potential increases in length of incarceration the government agreed not to pursue against the sentence Petitioner received, and finds that there was no reasonable probability that Petitioner would have rejected the plea agreement if counsel accurately advised him regarding the scope of restitution. Here, Petitioner received a sentence that was twenty-five percent of the maximum, was able to avoid additional criminal charges, and was willing to plead guilty despite not knowing the exact scope of his restitution. Consequently, it was highly unlikely that the prospect of a $650,000 restitution obligation would have persuaded Petitioner to risk many more years in jail in order to attempt to avoid restitution. The Court, accordingly, finds that Petitioner has failed to establish an ineffective assistance of counsel claim on this ground, and relief is denied.

### D. Certificate of Appealability

Lastly, the Court denies a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

IV. **CONCLUSION**

For the reasons set forth above, Petitioner's Motion is DENIED and the Court denies a certificate of appealability.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: July 19, 2018